**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GENEVIEVE BUTCZYNSKI, a/k/a : No. 3:05cv645
"JENNY" BUTCZYNSKI, :
           **Plaintiff** : **(Judge Munley)**
         :
         **v.** :
         :
LUZERNE COUNTY and LUZERNE :
COUNTY CORRECTIONAL :
FACILITY BOARD and :
EUGENE FISCHI, :
         **Defendants** :

## MEMORANDUM

Before the court for disposition is the defendants' motion for summary judgment in this employment discrimination case. The matter has been fully briefed and is ripe for disposition.

## Background

The Luzerne County Correctional Facility (hereinafter "LCCF") hired Plaintiff Genevieve Butczynski in or around 1983 as a corrections officer.[1] (Pl. Ex. 5, Pl. Dep. at 7). In May 1995, plaintiff's position changed again when she accepted the non-union position of "Lieutenant" (Id. at 9).

On October 10, 2003, a prisoner, a suspected-murderer, escaped from the LCCF. Plaintiff was not on duty when the escape occurred. (Pl. Ex. 5, Pl. Dep. at 127). The escape made local and national news. Lieutenant John Barry was on duty at the time of the escape. (Pl. Ex. 2, Pl. Aff. ¶ 5).

Barry showed plaintiff the reports of correctional officers on duty at the time of the escape. (Pl. Ex. 5, Pl. Dep. at 128). Plaintiff concluded that the reports were inconsistent with the report Defendant Eugene Fischi, Warden of LCCF, had provided to the news media. (Id.) Barry asked

---

[1]At the time that plaintiff received this position it was called "matron." (Pl. Ex. 5, Pl. Dep. at 7)

plaintiff if she would meet with someone from the media, and she agreed to because of the discrepancies between the prison reports and the newspaper accounts. (Id. at 136). Subsequently, plaintiff along with Barry, spoke with a reporter from the Times-Leader newspaper. (Id. at 139).

An article was published by the newspaper entitled "A Prison Run Amok? " on October 15, 2003. (Def. Ex. B). It indicated that the reporter had reviewed incident reports and referenced specific incidents that had allegedly occurred at LCCF. (Def. Ex. B). The article stated that Barry and plaintiff were of the opinion that lax supervision of inmates allowed the escape to occur. It also included photographs of incident reports regarding an inmate. (Id.).

The Luzerne County Prison Board directed Assistant Solicitor Michael Kostelansky to investigate the manner in which the newspaper obtained the prison records. (Def. Ex. D, Kostelansky, Dep. at 16). On October 20, 2003, the warden sent word that he wanted to see plaintiff. (Pl. Ex. 2, Pl. Aff. ¶ 24). A meeting was then held with the warden, the plaintiff, Assistant Solicitor Kostelansky, the warden's assistant Jacqueline Grimes and one of the deputy wardens. Plaintiff refused to answer any questions and sought legal representation at the meeting. She was labeled "uncooperative" and placed on suspension with pay. (Pl. Ex. 5, Pl. Dep. at 115).

The next day, the prison board sent plaintiff correspondence and informed her that it would consider terminating her employment at a hearing to be held on October 24, 2003. The board provided the following five reasons for the possible termination:  1) removal of misconduct/incident reports regarding inmates without permission; 2)

2

dissemination of information regarding inmates or former inmates to a newspaper; 3) failure to cooperate with an internal investigation; 4) disclosure of a former inmate's medical status to a newspaper; and 5) dissemination of information regarding two former inmates to a newspaper (Def. Ex. G, letter of Dr. Kowalski)

Plaintiff attended the hearing, and the following were also present: Kostelansky, Prison Board President Dr. Kowalski, Prison Board member Contance Wynn and Luzerne County Commissioners Thomas Makowski, Thomas Pizano and Stephen Urban.   (Def. Ex. H, Transcript of Disciplinary Hearing) Plaintiff denied removing property from the prison without permission or providing prison incident or misconduct reports to the newspaper. (Id.).

The defendants took no action against plaintiff after the hearing and she continued to be suspended with pay.   Finally, on March 6, 2004, Plaintiff retired from her position.   She then instituted the instant one-count complaint.   The complaint, brought pursuant to 42 U.S.C. § 1983, alleges the violation of several of the plaintiff's constitutional rights.   She asserts that the defendants suspended her because of her speech, and thus violated her First Amendment freedom of speech rights.   (Compl. ¶ 31). She also asserts that her suspension was continued in violation of the Equal Protection Clause of the Fourteenth Amendment and without due process of law.   (Compl. ¶ 32).   Plaintiff seeks damages to makes herself whole for the loss caused by the unexpected, unnecessary early retirement.   She also seeks attorney's fees and costs.   (Compl. ¶ 35).

After the period for discovery ended, the defendants filed the instant motion for summary judgment.   Defendants assert that the plaintiff's

section 1983 claim fails because: 1) a suspension without pay does not constitute an adverse action for section 1983 purposes; 2) plaintiff was not constructively discharged; 3) plaintiff did not engage in protected speech under the First Amendment; 4) plaintiff's Due Process claim fails as a matter of law; and 5) plaintiff's Equal Protection claim fails as a matter of law.   Defendant Luzerne County also argues that it cannot be held liable under Section 1983 because plaintiff has failed to produce any evidence that the actions taken in this case were taken pursuant to an official policy, custom or practice.   Finally, defendants assert that plaintiff has not created a triable issue of fact to support her claims against Warden Fischi. We will address these issues *in seriatim*.

## Jurisdiction

As this case is brought pursuant to 42 U.S.C. § 1983 for federal constitutional violations, we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

## Standard of review

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." Anderson v. Liberty Lobby, Inc., 477

4

U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

## Discussion

As set forth above, the defendants move for summary judgment on several grounds. We will discuss each separately.

## I. Section 1983/adverse employment action

Plaintiff claims that the defendant's retaliated against her, i.e. suspended her, for her speaking to the press and that this suspension violated her right to free speech. (Compl. ¶ 31). Defendants assert that a "suspension with pay" is not an adverse employment action; therefore, it cannot give rise to a free speech retaliation claim. We disagree with the

defendants.

The Third Circuit Court of Appeals has held that:

> In this context, the key question in determining whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. The effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable, but it must be more than de minimis.

McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotation marks and citations omitted)

As a governmental entity, the prison is a public employer. "A public employer adversely affects an employee's First Amendment rights when it refuses to rehire an employee because of the exercise of those rights or when it makes decisions, which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights." Brennan v. Norton, 350 F.3d 399, 419 (3d Cir.2003)(quotation marks omitted). "On the other hand, courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands." Id. (quotation marks omitted).

Defendants' argument is that a suspension without pay is not "adverse" because plaintiff sustained no injury other than receiving pay for not working.   Plaintiff asserts in her complaint that as a result of the defendants' actions she suffered "substantial injuries and damage." (Compl. ¶ 34).  In an affidavit, plaintiff sets forth her injuries as follows: "While I was suspended with pay, my life was horrible.  I cried everyday, could not sleep, was in constant fear, made my husband's life difficult and

barely left the house." (Pl. Ex. 2, Pl. Aff. ¶ 16).

Defendants have cited cases in support of their position, but none of them are on point or hold that a suspension without pay in a First Amendment retaliation case is not an adverse employment action.   We find that plaintiff's suspension, although with pay, where she was held in an employment limbo for several months until she finally retired, can be an adverse employment action.   Such conduct on the part of the employer is sufficient to cause a person of ordinary firmness to refrain from exercising her First Amendment rights.   Accordingly, summary judgment for the defendants on this issue is inappropriate.

## II. Constructive discharge

Plaintiff contends that she retired because she was concerned about whether she would be able to collect her pension if she was fired.   Thus, she asserts that the circumstances surrounding her retirement indicate that she was actually constructively discharged.   Defendant argues that plaintiff voluntarily retired, and her retirement was not a constructive discharge.   After a careful review, we will deny summary judgment regarding this issue.

The Third Circuit Court of Appeals has explained constructive discharge as follows:

> Employee resignations and retirements are presumed to be voluntary. This presumption remains intact until the employee presents evidence to establish that the resignation or retirement was involuntarily procured. If an employee retires of his own free will, even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government, and cannot contend that he was deprived of his due process rights.

Leheny v. City of Pittsburgh, 183 F.3d 220, 227-28 (3d Cir.1999) (internal

citations omitted).

With regard to determining if a resignation is voluntary, the court explained that"[t]here appear to be two circumstances in which an employee's resignation or retirement will be deemed involuntary for due process purposes: (1) when the employer forces the resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee." Id. at 228 (citing Hargray v. City of Hallandale, 57 F.3d 1560, 1568 [(11th Cir.1995)).

Defendant contends that plaintiff's retirement was strictly voluntary. Plaintiff argues that she retired because she was afraid of being fired. She feared that if she was fired, she would lose her pension.

The record reveals that plaintiff's position was in limbo. She was suspended and did not know whether she would be brought back to work or fired. She attempted to determine what effect a termination would have on her pension. She personally telephoned the county, including Steve Antoll of the county's treasurer's office and someone at the Luzerne County Retirement Board, to determine what would happen to her pension if she were fired. They told her that they did not know. (Pl. Ex. 2, Pl. Aff. ¶ 18). Antoll further told her to ask terminated guards wether they lost their pensions. (Id.). Warden Sincavage told her that she would, in fact, lose her pension if she was fired as opposed to if she retired. (Id.) Even when plaintiff's attorney at the time, Barry Dyller, called county officials the only answer he received was that they did not know about the pension issue. (Def. Ex. K, Dyller Dep. at 9). Because he could get no real answer on the issue, Attorney Dyller told plaintiff that the only way to be certain that she

8

would not lose her pension was to retire.  (Id. at 23).   If it credits the plaintiff's evidence, a jury could conclude that defendant constructively discharged the plaintiff by leaving her in such an uncertain position with regard to her pension.

We are unconvinced by the defendants' argument that the plaintiff was in possession of the information regarding her pension because she had possession of the "Summary Plan Description," which provides as follows:

> Your benefits are exempt from state and municipal taxes and from levy, sale, garnishment, attachment or any other process an may not be assigned, except for indebtedness due the County resulting from embezzlement or fraudulent conversion. In addition, if you are convicted or plead guilty or no defense to any crime related to public office or employment you will not be entitled in accordance with the Public Employee Pension Forfeiture Act to receive any retirement or other benefit except for a return of your member contributions without interest.

(Def. Attach. M, p. 11(footnote omitted)).

This passage does not answer the question of what happens to a pension when the employee is fired.  A reasonable person would not know after reading this passage that an employee retains her pension even if fired.  The passage is silent on that issue.

Accordingly, we find that summary judgment in favor of the defendant on the issue of constructive discharge is inappropriate.

## III.  Protected speech

Next, defendants attack plaintiff's claim that she engaged in speech that was protected by the First Amendment of the United States Constitution when she spoke to the Times-Leader reporter.  "[T]he First Amendment protects a public employee's right, in certain circumstances, to

speak as a citizen addressing matters of public concern." <u>Garcetti v.</u>
<u>Ceballos</u>, - - U.S. - - , 126 S. Ct. 1951, 1957 (2006) (citations omitted).
Courts employ a three step analysis to determine whether a plaintiff has
established a First Amendment retaliation claim.

First, the plaintiff must demonstrate that she "spoke as a citizen on a
matter of public concern." <u>Id.</u> at 1958 (citing <u>Pickering v. Board of Ed. of</u>
<u>Township High School Dist. 205, Will City</u>, 391 U.S. 563, 568 1968)).  If
she did, the court must determine "whether the relevant government entity
had an adequate justification for treating the employee differently from any
other member of the general public." <u>Id.</u> (citing <u>Pickering</u>, 391 U.S. at 568).
These determinations are questions of law for the court. <u>Baldassare v.</u>
<u>New Jersey</u>, 250 F.3d 188, 195 (3d Cir. 2001) (citations omitted).

Second, the plaintiff must establish "the protected activity was a
substantial or motivating factor in the alleged discriminatory action." <u>Id.</u>
Third, the government "can rebut the claim by demonstrating 'it would have
reached the same decision . . . even in the absence of the protected
conduct.'" <u>Id.</u> (quoting <u>Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle</u>,
429 U.S. 274, 287 (1977)).  The second and third stages present questions
of fact for the jury. <u>Id.</u> (citations omitted).

Plaintiff avers that she engaged in protected speech when he spoke
with the <u>Times Leader</u> about the situation within the prison.  Evidently, the
parties agree that Butczynski's statements addressed matters of public
concern.  Moreover, the escape at issue attracted widespread media
attention, and prison security is a matter of public concern. <u>See</u> <u>Cygan v.</u>
<u>Wisconsin Dep't of Corrections</u>, 388 F.3d 1092, 1100 (7th Cir. 2004).

Thus, we must determine whether defendants were justified in

treating plaintiff differently from a member of the public, i.e. allegedly retaliating against her.  In order to determine if the defendants were justified we must conduct a "'balance between the interests of the [employee] . . . in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Watters v. City of Philadelphia, 55 F.3d 886, 891-92 (3d Cir. 1995) (quoting Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)).  On the plaintiff's side, we consider her interests as well as the "public's interest in 'free and unhindered debate.'" Id. (quoting Versarge v. Clinton, 984 F.2d 1359, 1366 (3d Cir. 1993)).  Since the interests must truly be balanced, where an employee demonstrates either that she or the public has a heightened interest in her speech, the government's corresponding burden to justify the retaliation is also heightened. Watters, 55 F.3d at 895 (citing Connick v. Myers, 461 U.S. 138,150 (1983).

On the defendants' side, we consider the "employer's interest in 'the effective and efficient fulfillment of its responsibilities to the public." Id. (quoting Connick, 461 U.S. at 150).  In weighing this interest, we consider factors such as, "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." Rankin v. McPherson, 483 U.S. 378, 388 (1987).

Defendants' position is that the balance weighs in their favor because plaintiff disrupted prison operations by speaking outside of the chain of

command.  In support of their position they primarily rely on an unpublished opinion, Ober v. Evanko, 80 Fed. Appx. 196 (3d Cir. 2003).  In Ober, the Third Circuit found that the First Amendment did not protect a Pennsylvania State Police officer's right to violate a department regulation by presenting his grievances to a member of the department other than his superior.  Id. at 201.  The regulation required members of the state police to report suspected wrongdoing to their superiors.  The plaintiff in Ober did not do so, but instead informed another officer.  Id.  The court found that the First Amendment does not protect "one of retaliation for speaking outside the chain of command."  Id.  The court explained that "[t]hese regulations were designed to promote efficiency and trust, to maintain order and discipline, and to effectively alert superiors to potential problems or wrongdoing.  The need to enforce compliance with these regulations far outweighs Ober's interest in violating them."  Id.

Ober is distinguishable from the instant case.  In Ober, the plaintiff complained *within* the department, and thus the sole interest the court considered was his interest in violating the chain of command.   In the instant case, instead of merely complaining within the department, the plaintiff spoke in a public forum, the news media.   Accordingly, we must consider not only plaintiff's interest in his speech, but also, the public's interest in access to the information.[2]  "[T]he First Amendment interests at stake extend beyond the individual speaker.  The [United States Supreme] Court has acknowledged the importance of promoting the public's interest

_____

[2]In addition, the instant matter is a matter directly implicating public safety, that is security at the prison, and is qualitatively different from a police officer speaking with another police officer regarding a police corruption investigation as in Ober.

in receiving the well-informed views of government employees engaging in civil discussion. <u>Garcetti</u>, 126 S.Ct. at 1958.

Moreover, in some situations, the violation of a chain of command policy does not outweigh a public employee's and the public's interest in speech on matters of public interest.  In <u>Czurlanis v. Albanese</u>, the plaintiff, an auto mechanic employed by the defendant county, alleged that he was fired in retaliation for numerous statements he made before the county board.  721 F.2d 98, 100-02 (3d Cir. 1983).  The defendants argued that the plaintiff made these statements outside of the established chain of command.  <u>Id.</u> at 105-06.  The Third Circuit noted that the employer's policy did not delineate "what matters would be covered by the chain-of-command policy and what matters would be regarded as appropriate for public speech by a County employee."  <u>Id.</u> at 105.  Thus, the court found that the breach of the chain of command could not justify retaliating against the plaintiff.  <u>Id.</u>

> It is simply incompatible with the principles that underlie the First Amendment to countenance a policy that would severely circumscribe in this manner speech on public issues, which occupies the "highest rung of the hierarchy of First Amendment values". . . . A policy which would compel public employees to route complaints about poor departmental practices to the very officials responsible for those practices would impermissibly chill such speech.

<u>Id.</u> at 105-06 (citations omitted).

In finding that the county's interest did not outweigh the plaintiff's, the court focused on the plaintiff's "hierarchical proximity" to the criticized officials and whether his speech had strained relationships with co-workers with whom personal loyalty and confidence were necessary.  <u>Id.</u> at 106.  It observed he was not "normally in contact" with the criticized officials "'in the

13

course of his daily work.'" Id. (quoting Pickering, 391 U.S. at 569-70). Thus, his position in the hierarchy did not require personal loyalty and confidence and "there is no evidence that a needed close working relationship was destroyed." Id. Therefore, even though the plaintiff circumvented the chain-of-command, the court concluded that the disruption did not outweigh the plaintiff's First Amendment interests because he did not undermine a relationship of personal loyalty and confidence.

The hierarchical proximity and need for personal loyalty and confidence, while never dispositive alone, are the most important considerations in the disruption analysis.  In Sprague v. Fitzpatrick, the court found the plaintiff's criticism of the defendant district attorney was not protected because the plaintiff, as the first assistant district attorney, functioned as the defendant's "alter ego" and was his "direct administrative and policy-making subordinate." 546 F.2d 560, 565 (3d Cir. 1976).  In Curinga v. City of Clairton, the plaintiff's criticism of city council members was not protected because, as the municipal manager, he "occupied the most sensitive, high-level policy making appointive position in the City of Clairton, one that required confidentiality and a close working relationship with city council members to effectively implement their policies." 357 F.3d 305, 313 (3d Cir. 2004).  In Versarge v. Township of Clinton, the court found that the plaintiff's complaints about the fire chief were not protected because the plaintiff's comments created "extreme malcontent" among his fellow members of the fire company.  984 F.2d 1359, 1366 (3d Cir. 1993). In contrast, in Waters v. City of Philadelphia, the court found that the plaintiff police officer's criticism of the management of a police employment

program was protected speech because there was no evidence that the plaintiff's position required a "close working relationship" with the police commissioner, they did not interact on setting policy, and he appeared to work within a "discrete operation within the Police Department." 55 F.3d 886, 898 (3d Cir. 1995).

Here, however, the record before the Court does not provide evidence of whether plaintiff was required to interact on a daily basis with the individuals she criticized in the news media. There is no evidence on whether plaintiff's position required that she maintain a relationship of personal loyalty and trust with Fischi or the individual correctional officers discussed in the article. Although it is clear that plaintiff ultimately reported to Fischi, it is equally clear that neither Fischi nor the deputies were her direct superiors and at least one rank, captain, separated them. Based on the record before us, we cannot determine whether "the relationship between superior and subordinate is of such a personal and intimate nature that certain forms of public criticism of the superior by the subordinate would seriously undermine the effectiveness of the working relationship between them." Sprague, 546 at 564 (quoting Pickering, 391 U.S. at 570 n.3). Summary judgment is inappropriate where the plaintiff's relationships are unclear and it cannot be determined whether the speech destroyed a "needed close working relationship. See Zamboni v. Stamler, 847 F.2d 73, 79 (3d Cir. 1988) (reversing summary judgment and remanding for the district court to determine the plaintiff's role in the office, the nature of his office relationships, and the effect of the speech). Accordingly, we will deny Defendants' motion for summary judgment on whether plaintiff's comments

15

in the October 15, 2003 articles were protected speech.[3]

## IV. Due Process Claim

Plaintiff's complaint also asserts that the defendants violated her rights to due process by suspending her.  Defendants argues that, as an "at-will" employee, plaintiff had no due process right in her job and even if she did, they provided her all process that was due.  Plaintiff does not respond to defendants' arguments in her opposition brief.  We thus find that she does not oppose the motion for summary judgment with regard to her due process claim, and the motion will be granted.  See Local Rule 7.6 (explaining that a party will be deemed not to oppose a motion if she does not file an opposition brief).

Even if we were to address the merits of the claim, however, we would rule in the defendants' favor.  In order to establish a due process claim, plaintiff would have to establish that she had a property interest in her employment.

> To have a property interest in a job, however, a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment. . . . The decisional law is clear that an at-will employee does not have a legitimate entitlement to continued employment because she serves solely at the pleasure of her employer.

Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005).

---

[3] We recognize that this issue is a question of law, Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001) (citations omitted), which normally would be appropriate for summary judgment.  However, if underlying facts necessary for the analysis are disputed, they are questions for the jury, Bennis v. Gable, 823 F.2d 723, 729 & n.6 (3d Cir. 1987), and if these facts are not presented to the court, it cannot grant summary judgment, Zamboni, 847 F.2d at 79.

In Pennsylvania, public employees generally serve as at-will employees.  Id. Plaintiff has provided no reason why this general rule does not apply to her situation.  Therefore, if we were not granting judgment to the defendants on the basis of this portion of their motion being unopposed, we would grant judgment on these grounds. [4]

## V.  Equal Protection

Plaintiff claims that her rights under the Equal Protection Clause of the United States Constitution were violated when she was suspended and constructively discharged.  She relies on the "class of one" theory announced in Village of Willowbrook v. Olech, 528 U.S. 562 (2000).  To satisfy a "class of one" claim, a plaintiff must establish: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). Plaintiff claims that numerous other prison employees who broke rules were "similarly situated" for the purpose of her claim.  We disagree.  The guards she identified did not have similar disciplinary records, and she has produced no evidence that any of them refused to participate in a prison investigation.  Furthermore, there is no evidence that their alleged infractions were similar.  Plaintiff also claims that Warden Fischi was

---

[4]Plaintiff's complaint is silent on whether she is advancing a procedural or substantive due process claim.  The above-analysis applies to substantive due process.  Procedural due process requires that an employee be provided notice and an opportunity to be heard before an adverse employment action.  Gikas v. Wasthing School Dist., 328 F.3d 731, 738 (3d Cir. 2003).  To the extent that plaintiff asserts a procedural due process claim, the facts as set forth above, indicate that she was provided notice and the opportunity to be heard before her suspension.

similarly situated because Fischi spoke with the media.  Fischi, however, was the warden, not a lieutenant.  Moreover, there is no evidence that Fischi had a comparable disciplinary record or refused to cooperate with a prison investigation.  We will therefore grant summary judgment to the defendants on this claim.

## VI. Liability of the County

Luzerne County asserts it cannot be liable based on the decision of the Prison Board because it is a separate entity.  We disagree.  The County cannot be held liable as a municipality for the constitutional torts of its employees based solely on the doctrine of *respondeat superior*.  Robinson, 120 F.3d at 1295 (citing Monell v. Dept. of Social Services, 436 U.S. 658 (1978)).  "Municipal liability attaches only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury' complained of."  Id. (quoting Monell, 436 U.S. at 694).  A plaintiff can demonstrate that a municipality's course of conduct amounts to government policy when "a decisionmaker possessing final authority to establish municipal policy with respect to the action 'issues an official proclamation, policy, or edict.'" Andrews, 895 F.2d at 1480 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

We find that the Prison Board is the authorized policymaker of Luzerne County for the purposes of making policy decisions regarding the prison.  There is no question that the Prison Board had the authority to bind the County to its decision regarding plaintiff's employment, and its decision in this regard was final.  Indeed, the County asserts that the Prison Board should be liable because it possessed the final decisionmaking authority

and the County Board did not.  The County cannot immunize itself from constitutional harm that its policies cause merely by delegating the authority to create the policy to an independent board.  The Prison Board was the authorized decisionmaker possessing authority to establish municipal policy with regard to the prison, and the County can be bound based on the Board's official proclamations, policies, or edicts.  Therefore, we will deny the motion for summary judgment on the County's liability as a municipality.

## VII.  Qualified Immunity

Defendant Fischi argue that even if he did violate Plaintiff's First Amendment rights, he is entitled to qualified immunity.  "The doctrine of qualified immunity shields government officials from civil liability as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  McGreevy v. Stroup, 413 F.3d 359, 364 (3d Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982))  Although the right to be free from retaliation for protected conduct is clearly established, see, e.g., id., as set forth above, there is a question of fact as to whether the plaintiff engaged in protected speech.  See Section III supra.  Thus, we cannot resolve the qualified immunity issue at this juncture because we have insufficient evidence to determine whether the plaintiff engaged in protected speech.  See Karnes v. Skrutski, 62 F.3d 485, 491-92 (3d Cir. 1995) (finding that the second prong of the qualified immunity analysis "may require factual determinations if the nature of the conduct is disputed").

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment will be granted in part and denied in part.  It will be granted with

respect to plaintiff's due process and equal protection claim, but it will be denied in all other respects.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GENEVIEVE BUTCZYNSKI, a/k/a "JENNY" BUTCZYNSKI,** | : | **No. 3:05cv645** |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **LUZERNE COUNTY and LUZERNE COUNTY CORRECTIONAL FACILITY BOARD and EUGENE FISCHI,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 26th day of January 2007, the defendants' motion for summary judgment (Doc.  ) is hereby **GRANTED** with respect to plaintiff's equal protection and due process claims, and **DENIED** in all other respects.

BY THE COURT:

s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court

21